605 So.2d 123 (1992)
111 PROPERTIES, INC., and Henry D. Vara, Jr., Appellants/Cross appellees,
v.
William G. LASSITER, Jr., Roger Glomstead, Gregor K. Emmert and Ronald K. Turner, d/b/a A & M Partnership, Appellees/Cross appellants.
No. 91-0509.
District Court of Appeal of Florida, Fourth District.
August 19, 1992.
Rehearing Denied October 13, 1992.
*124 Roger L. Shaffer, Boca Raton, for appellants/cross appellees.
William H. Pruitt of Pruitt & Pruitt, P.A., for appellees/cross appellants.
GUNTHER, Judge.
111 Properties, Inc., and Henry D. Vara, Jr., seek the reversal of an adverse final judgment for $105,174.84 entered in favor of A & M Partnership (A & M). The $105,174.84 equals the amount of back taxes owed on an A & M property, which A & M sold to 111 Properties. We reverse and address the arguments pertinent to our disposition of this appeal.
The A & M property in dispute was first leased to Frank A. Cashman, who then assigned the written lease to Auntie Mame's Electric Cowboy, Inc. (AMEC). Vara had a twenty percent interest in AMEC. Without a written assignment of the lease, Backstreet Restaurant and Lounge, Inc. (BRL) took possession of the A & M property from AMEC. A & M refused to permit an assignment of the lease to BRL, yet permitted BRL, whose sole shareholder was Vara, to remain in possession. While BRL was still in possession, A & M and William Edy, as trustee for a corporation to be formed, entered a land sales contract (contract) to purchase the A & M property. 111 Properties was the corporation subsequently formed to purchase the A & M property. Vara was 111 Properties' sole shareholder. Thus, Vara had a twenty percent interest in AMEC and was the sole shareholder of both BRL (the party in possession of the A & M property) and 111 Properties (the purchaser of the A & M property). Vara acknowledges that 111 Properties was formed to purchase the property, in part, because William G. Lassiter, Jr. (a partner of A & M) disliked Vara and would not sell the A & M property to him.
A special clause in the contract stated that the "Buyer represents that it is not the tenant." Also, an addendum to the contract explained the manner in which the purchase price of $1,000,000.00 could be lowered:
The Purchaser will assist the Seller in collecting the following from the Tenant on a best efforts basis:
1. The full payment of the prior taxes, value of a 4 COP liquor license, and *125 all back rent payments from the parties in possession.
... .
If Purchaser assumes the responsibility for all back taxes including (1988) the purchase price will be reduced to $850,000.00.
If any taxes for 1984, 1985, 1986 or 1987 are paid by Tenant, these sums will be added to the $850,000.00 purchase price.
111 Properties paid the back taxes at closing, and pursuant to the terms of the contract, purchased the property for $850,000.00.
Months later, A & M sued 111 Properties and Vara essentially for breach of contract and fraud. A & M alleged that 111 Properties and Vara owed it all the back rent and taxes on the A & M property purchased by 111 Properties. The back taxes in question were the same ones 111 Properties had paid at the closing of the property.
At the non-jury trial that followed, A & M's theory of the case, as asserted in its closing argument, was founded on the contract between 111 Properties and A & M. According to A & M, Vara was both the buyer and the tenant of the property. A & M argued, therefore, that the contractual representations that the buyer was not the tenant and that the buyer would assist the seller in collecting the back taxes and unpaid rent from the tenant were misleading and intended to deceive A & M; these misrepresentations were ruses that enabled Vara and 111 Properties to acquire the A & M property at the lower price of $850,000.00, rather than the original purchase price of $1,000,000.00. A & M asserted that this deception would support the trial court's piercing of the corporate veil of 111 Properties to hold Vara personally liable and would also be the basis for a judgment against 111 Properties and Vara for fraud and breach of contract. A & M further argued that the measure of damages should be an amount equal to the back taxes that were owed and paid by 111 Properties at the time of the closing. For whatever reason, A & M did not suggest to the trial court any outstanding amount in back rent.
In entering a judgment against Vara individually, the trial court agreed with A & M's contention that the corporate veil of 111 Properties should be pierced. The trial court also ruled against 111 Properties for breach of contract in failing to assist A & M in collecting the monies owed by the tenant. The trial court's award of $105,174.84 to A & M was equal to the amount of back taxes, not back rent, owed on the A & M property. A & M did not file a cross appeal to make an issue of the trial court's failure to award back rent.
Vara maintains that the trial court reversibly erred in piercing the corporate veil of 111 Properties and in holding him personally liable for paying an amount equal to the back taxes on the property in dispute. Vara claims he cannot be held personally liable because no evidence indicates that 111 Properties was formed to mislead or defraud its creditors.
In addition, 111 Properties maintains that it did not breach the contract by failing to use its best efforts to collect back taxes from the tenant, AMEC. 111 Properties contends that the obligation was not a condition precedent to the enforcement of the contract and that any efforts to seek collection from the tenant would have been futile because AMEC was insolvent at the time. 111 Properties also argues that no breach took place because it paid the back taxes at closing, which, under the contract, allowed it to purchase the property for $850,000.00.
For the corporate veil of 111 Properties to be pierced to reach Vara individually, A & M needed to demonstrate the existence of improper conduct in the formation or use of 111 Properties. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1118-21 (Fla. 1984); Steinhardt v. Banks, 511 So.2d 336, 339 (Fla. 4th DCA), rev. denied, 518 So.2d 1273 (Fla. 1987). A & M failed to make such a showing. A & M's assertion that the formation of 111 Properties was a fraud and a subterfuge to keep Lassiter from knowing that it was really Vara purchasing the property is insufficient grounds for piercing the corporate *126 veil of 111 Properties. Although it may have been clever, it is not an example of the kind of conduct the supreme court in Dania Jai-Alai Palace describes as sufficient to pierce a corporate veil.
Furthermore, A & M's argument that Vara was both the buyer and the tenant and, thus, personally liable is without merit. For Vara to be considered the buyer and the tenant, the corporate veils must first be pierced; only then does the statement in the contract that the buyer is not the tenant become a misrepresentation. The evidence, however, establishes that each corporation (111 Properties, AMEC, and BRL) is a separate, legal entity that was not involved in any improper conduct. As such, Vara was neither the buyer nor the tenant. The buyer and the tenant were the corporations to which Vara was a shareholder. Consequently, no misrepresentation took place. American States Ins. Co. v. Kelley, 446 So.2d 1085, 1086 (Fla. 4th DCA) ("The general rule is that corporations are legal entities separate and distinct from the persons comprising them. Absent fraud, the corporate veil is not pierced") (citation omitted), rev. denied, 456 So.2d 1181 (Fla. 1984).
With respect to 111 Properties' alleged breach of contract for failing to assist A & M in collecting the back taxes and back rent from the tenant, we find that 111 Properties was not in breach. Although 111 Properties concedes that it did not assist A & M in collecting the monies owed, it notes that AMEC was insolvent at the time and any effort on its part to collect from AMEC would have been futile. Moreover, the contract between 111 Properties and A & M does not make all 111 Properties' assistance in the collection of the outstanding amounts a condition precedent to the enforcement of the contract. 111 Properties could have chosen, as it did, to pay the back taxes itself and, thereby, pay $850,000.00 for the property. Accordingly, 111 Properties did not breach the contract.
In conclusion, because A & M failed to show sufficient evidence to warrant the piercing of any corporate veil, we reverse the final judgment against Henry D. Vara, Jr. We also reverse the final judgment against 111 Properties, because it was not required to assist A & M in the collection of the back taxes if it assumed the responsibility for their payment.
REVERSED AND REMANDED.
DOWNEY, J., and WALDEN, JAMES H., Senior Judge, concur.