870 So.2d 99 (2003)
U-CAN-II, INC., a Florida corporation, Appellant,
v.
Richard SETZER, et al., Appellees.
No. 1D03-2150.
District Court of Appeal of Florida, First District.
November 26, 2003.
Rehearing Denied January 14, 2004.
R. Dan Boulware and R. Todd Ehlert of Shugart, Thomson, Kilroy, Watkins, Boulware, P.A., St. Joseph, Missouri; and Joel Settembrini, Jr., of Smith, Hulsey & Busey, Jacksonville, for Appellant.
Gaspare J. Bono of McKenna, Long & Aldridge, LLP, Washington, D.C.; John L. Watkins of McKenna, Long & Aldridge, LLP, Atlanta; and Betsy C. Cox of Rogers Towers, Jacksonville, for Appellees.
PER CURIAM.
This cause is before us on appeal of a non-final order compelling arbitration. On review of the record, we hold that the trial court erred in holding that Appellant was the alter ego of certain non-parties and that, on that basis, Appellant's corporate veil could be pierced.
The Florida Supreme Court has held that the corporate veil may not be pierced absent a showing of improper conduct. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1119-21 (Fla.1984); see also French v. F.F.O. Financial Group, Inc. 651 So.2d 727 (Fla. 1st DCA 1995). It must be shown that the corporation was organized or used to mislead creditors. Sykes, 450 So.2d at 1119-21. Here, the trial court did not make the requisite specific finding of improper conduct. Appellees also did not present any evidence showing improper conduct or that Appellant was organized or used to mislead creditors. Thus, Appellees failed to establish a basis for piercing Appellant's corporate veil.
*100 Appellees also failed to show that Appellant was the agent of certain non-parties to this appeal. The record contains no express contract of agency, and Appellees presented no evidence of apparent authority. See, e.g., Almerico v. RLI Ins. Co., 716 So.2d 774, 777 (Fla.1998).
Accordingly, we reverse the trial court's determination that Appellant is the alter ego and/or agent of certain non-parties. We affirm the other issues raised on appeal without further discussion and remand for further proceedings consistent herewith.
AFFIRMED in part; REVERSED in part; REMANDED for further proceedings.
BOOTH and KAHN, JJ., concur; ERVIN, J., concurs with written opinion.
ERVIN, J., concurring.
Although I concur with the majority's disposition of the issue that it has decided, I would also address an issue it summarily affirms, relating to the question of whether the trial court misapplied the law in ruling that defendants/appellees did not waive their right to arbitration by acting inconsistently with such right by, among other things, filing an answer and a counterclaim to the civil action before moving to arbitrate. Appellees defend the lower court's order, relying upon both Florida and federal case law holding that before waiver may be found a showing of prejudice resulting from the inconsistent acts must be made by the party opposing arbitration. See Benedict v. Pensacola Motor Sales, Inc., 846 So.2d 1238, 1240-41 (Fla. 1st DCA 2003); GLF Constr. Corp. v. Recchi-GLF, 821 So.2d 372 (Fla. 1st DCA 2002);[1]Lane v. Sarfati, 691 So.2d 5 (Fla. 3d DCA 1997); Britton v. Co-op Banking Group, 916 F.2d 1405 (9th Cir.1990).
Benedict, an opinion of the First District, did so hold, and I consider myself bound by that decision. I am of the firm belief, however, that Benedict was incorrectly decided because the Florida Supreme Court, in its interpretation of Florida's Arbitration Code, imposed no requirement of prejudice in concluding that waiver had occurred due to a party's acts inconsistent with arbitration. See Klosters Rederi A/S v. Arison Shipping Co., 280 So.2d 678, 681 (Fla.1973) ("A party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right."). The rule established in Hoffman v. Jones, 280 So.2d 431 (Fla.1973), is clear that appellate district courts have no authority to overrule precedential decisions of the Florida Supreme Court. Although Benedict did certify conflict with other district courts of appeal, my independent research does not reveal that review of the Benedict decision has been sought in the supreme court.
In deciding that a demonstration of prejudice is an essential prerequisite to a determination of waiver, Benedict relied in part upon a recent Florida Supreme Court decision, Seifert v. U.S. Home Corporation, 750 So.2d 633, 636 (Fla.1999), which stated that both the Florida and federal arbitration codes recognize three elements for courts to consider in ruling on whether a motion to compel arbitration should be granted. One of the elements mentioned was waiver. Interestingly, however, Seifert did not involve any issue of waiver; therefore, it did not address the question *101 of prejudice. Instead, it held that the subject of the action at law, wrongful death, was not encompassed by the first two elements involved in the analysis, i.e., whether a valid written agreement to arbitrate exists, or whether an arbitrable issue exists. As a result, the supreme court approved the trial court's denial of the defendant's motion to arbitrate.
The Florida cases outlined in the Benedict opinion requiring a showing prejudice cite the similarity between the federal and Florida arbitration codes, and have elected to follow "federal decisions ... [holding] that a showing of prejudice is indispensable to a conclusion that the maintenance of a position inconsistent with arbitration waives that remedy." Lane v. Sarfati, 691 So.2d at 5. I find this analysis incomplete. The correct test recognizes that if a Florida statute is patterned after a federal statute on the same subject, it will take the same construction in Florida courts as its prototype is given in federal courts insofar as such interpretation is harmonious with the spirit and policy of Florida legislation on the subject. See Kidd v. City of Jacksonville, 97 Fla. 297, 120 So. 556 (1929).
In addition to the unanswered question of whether the federal and Florida arbitration statutes are consistent in seeking the same goals, it should be observed, as the Second District did in ruling a showing of prejudice was not required, that the federal courts of appeal are not unanimous in holding that such showing must be made, and, more to the point, this is an issue that has not been addressed by the United States Supreme Court. See Donald & Co. Secs. v. Mid-Florida Cmty. Servs., Inc., 620 So.2d 192, 194 (Fla. 2d DCA 1993). The Second District continued that "Florida courts are bound only by the United States Supreme Court in interpreting acts of Congress." Id. at 193. Indeed, the Supreme Court itself has said, regarding the interpretation of state legislation, "Only [state] courts can supply the requisite construction, since of course `we lack jurisdiction authoritatively to construe state legislation.'" Gooding v. Wilson, 405 U.S. 518, 529, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (quoting U.S. v. Thirty-Seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971)).
Finally, it appears to me from a reading of the very case relied on by Benedict to support its conclusion that a demonstration of prejudice is essential, i.e., Seifert v. U.S. Home Corporation, that the construction given the comparable federal arbitration statute by a majority of the federal circuits is not harmonious with the spirit and policy of the Florida legislation on the subject. Although, as I previously noted, Seifert did not address the issue of waiver, some of the comments made by the court in regard to the question of whether an arbitration contract mandates arbitration of certain types of claims appear to be equally applicable to the question of whether waiver bars a party's agreement to arbitrate:
Moreover, public policy also supports the result we reach in this case. As noted by the trial court, to require petitioner to submit her tort claim to binding arbitration would deprive her of her rights to a trial by jury, due process and access to the courts. See generally Jean R. Sternlight, Rethinking the Constitutionality of the Supreme Court's Preference for Binding Arbitration: A Fresh Assessment of Jury Trial, Separation of Powers, and Due Process Concerns, 72 Tul. L.Rev. 1, 48 (1997). As Sternlight notes:
In particular, lower courts have failed to consider the visibility and clarity of the purported agreement, the relative strength and knowledge of the parties, the voluntariness of the agreement, and the substantive fairness of the *102 agreement. Rather than ignoring these factual variations, courts should use them to craft a balancing test to determine whether parties waived their constitutional rights by agreeing to arbitration. It is wrong to stretch contractual interpretations to uphold a purported arbitration agreement where such an agreement would waive constitutional rights.

Id. Neither the statutes validating arbitration clauses nor the policy favoring such provisions should be used as a shield to block a party's access to a judicial forum in every case.
Seifert, 750 So.2d at 642.
One important public policy consideration in a court's decision of whether to require arbitration in Florida cases, briefly alluded to in Seifert, is the fact that the Florida Constitution, unlike the federal, specifically confers on all persons the right to access to courts. Art. I, § 21, Fla. Const. As a result, it seems to me that a fair reading of Seifert strongly suggests that when an important constitutional right, such as one's right of action in the courts, is abrogated by an arbitration agreement, the contract should be narrowlynot expansivelyconstrued.
In my judgment, the question of waiver of a party's contractual right to arbitrate is an important, recurring issueone that Florida courts continue to be divided overnotwithstanding that the supreme court has never receded from its earlier decision in Klosters, and, indeed, there appears to be language in Seifert supporting the Klosters result. I would therefore not only certify conflict with those Florida appellate decisions that hold no prejudice need be demonstrated in order for waiver to occur, as referenced in Benedict v. Pensacola Motor Sales, Inc., 846 So.2d at 1242-43, but I would certify as well the following question as one of great public importance to the Florida Supreme Court:
WHETHER THE FLORIDA ARBITRATION CODE, WHICH IS SIMILAR TO ITS FEDERAL COUNTERPART, MUST BE CONSTRUED IN A MANNER CONSISTENT WITH THAT GIVEN THE FEDERAL CODE BY A NUMBER OF FEDERAL APPELLATE COURTS, THEREBY REQUIRING THAT BEFORE WAIVER OF AN ARBITRATION AGREEMENT CAN BE ESTABLISHED, A SHOWING MUST FIRST BE MADE THAT THE PARTY OPPOSING ARBITRATION WAS PREJUDICED BY THE ACTS OF THE OTHER PARTY?
NOTES
[1] I question the precedential authority of GLF Construction as requiring a demonstration of prejudice as applied to this case, because the issue in GLF Construction is clearly distinguishable, in that it involved a dispute as to which of two arbitrators under the contract would conduct the arbitration proceeding.